IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:18-cr-0555-CAB |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| v. | ) | |
| | ) | **ORDER ON DEFENDANT'S** |
| MARLON LOPEZ-MONZON, | ) | **MOTION TO REVOKE** |
| | ) | **DETENTION ORDER AND FOR** |
| Defendant. | ) | **BOND** |
| | ) | |

**I.     Introduction**

The United States has charged Defendant Marlon Lopez-Monzon by an indictment filed on September 26, 2018 with Illegal Reentry in violation of 8 U.S.C. § 1326. If convicted, defendant faces a fine and/or term of imprisonment of up to twenty years under § 1326(b)(2) if his 2002 Missouri conviction of forgery is characterized as an "aggravated felony" under 8 U.S.C. §1101(a)(43)(R). If that prior offense is not so characterized, he faces a term of imprisonment of up to ten years under § 1326(b)(1).

At arraignment October 4, 2018, the government moved for detention, and defendant executed a general waiver of his right to a detention hearing. The motion for detention was granted and defendant was remanded to the custody of the U.S. Marshal. The detention wavier did not reserve the right to request a reconsideration of detention in the event of a chance of circumstances. On November 11, 2018, defendant filed a "Motion to Revoke Detention

Order/Motion for Bond. ECF Doc. 12. The Court referred the motion to the undersigned to conduct the requested hearing. ECF Doc. 13. I conclude defendant's motion to revoke the earlier detention order and to grant him bond must be GRANTED.

## II.     The Detention Hearing and Evidence

A detention hearing was conducted on November 19, 2018 after which the court invited the United States to file a brief in opposition to defendant's motion on or before November 21, 2018. Assistant United States Attorney Brad Beeson advised the court on November 21, 2018 that the government would not be filing a brief but would, instead, stand upon the arguments and evidence submitted at the hearing.

The government called Vincent Joyce, an ICE deportation officer, to testify. Officer Joyce testified concerning government Exhibits 1 through 4. Those records reflect defendant's conviction of forgery in Missouri in 2002 under the alias Marcos Rivera-Sanchez and his receipt of a Notice of Intent to Issue a Final Removal Order in 2003 based upon his conviction of an aggravated felony. They also reveal defendant's admission to using the alias and that his actual name is Marlon Lopez-Monzon, as alleged in the current indictment. The records reflect defendant's reentry in to the United States in March 2003, one month after his removal. The records indicate defendant is a citizen of Guatemala. Officer Joyce admitted ICE had been unaware of defendant's presence in the United States until his September 2018 arrest on the instant charge. Officer Joyce admitted on cross examination that ICE had reinstated the earlier, 2003 removal order upon defendant's arrest. Joyce was made aware of defendant's 2017 petition for asylum and acknowledged that defendant used his correct legal name on the petition. Officer Joyce admitted ICE had not determined the immigration status of defendant's wife, but he

acknowledged defendant and his wife had had three children born in the United States since 2003.

Defendant called his wife, Maura Yuliana Orellana-Martinez to testify. She authenticated several exhibits, including:

> Exhibits A-1 and A-2 (a warranty deed for the residential real estate owned by defendant and Ms. Orellana Martinez);
> Exhibit B (a record of the mortgage on the residential real estate owned by defendant and his wife);
> Exhibits C-1a, C-1b and C1c (a translation of a letter by Ms. Orellana Martinez to the court and the original Spanish version of the same);
> Exhibit C-2 (a letter to the court from one of the minor children of the defendant);
> Exhibit C-3 (a letter to the court from one of the minor children of the defendant);
> Exhibit C-4 (a to whom it may concern letter from Alexandra Orellana);
> Exhibit C-5 (a to whom it may concern letter from Jose Orellana);
> Exhibit C-6 (a to whom it may concern letter from Samantha Orellana);
> Exhibit C-7 (a to whom it may concern letter from Norma Luz Molina);
> Exhibit C-8 (a to whom it may concern letter from Alexandra Orellana);
> Exhibit C-8 (a to whom it may concern letter from Danielle Lopez);
> Exhibit C-9 (a to whom it may concern letter from Jorland Cordova);
> Exhibit D (a to whom it may concern letter from the general manager of defendant's employer);
> Exhibit E (defendant's attorney's appearance notice and Form I-589 asylum application filed January 6, 2017 – including a certified copy of defendant's marriage record from Cuyahoga County, reflecting his marriage date of April 15, 2016).

Pretrial Services Officer Travis Jennings' pretrial risk assessment found Defendant Lopez-Monzon presented a PTRA Risk of 4, the second highest possible score.

The government asserted defendant should continue to be detained under 18 U.S.C. § 3142(f)(2) because he posed a serious risk of flight and a serious risk of obstructing justice. The government acknowledged it was not contending defendant posed a safety risk to the community. Both parties acknowledged there was no presumption under 18 U.S.C. § 3142 that defendant should be detained. The government acknowledged that if the court granted bond

after conducting an analysis of the issues under the requirements of the Bail Reform Act, ICE would administratively detain defendant pursuant to its reinstatement of the 2003 removal order.

## III. Analysis

Initially, the undersigned finds, for the reasons articulated by Judges Gwin and Zouhary of this Court,[1] that the determination of whether to grant bond must be made in accordance with the requirements of the Bail Reform Act ("BRA") and not pursuant to the detention rights of the United States under the Immigration and Nationality Act ("INA"). The BRA, enacted by Congress long after the INA, did not make those charged with immigration-law criminal offenses categorically ineligible for bond. Indeed, Congress chose not to even create a presumption for the detention of such persons under the BRA. Thus, the court is obligated to assess the issue of whether there are any bond conditions that could reasonably assure defendant's future court appearances in the manner established in the BRA.

The following facts support the government's position that detention should be ordered: defendant appears to be in the United States unlawfully and faces removal and possible incarceration if convicted. In 2002 defendant was convicted of felony offense of forgery for apparently using an alias in an effort to obtain false Social Security papers (that presumably could have allowed him to fraudulently obtain the right to be present in the United States). The evidence against the defendant on the instant charge appears strong. The government's flight risk argument is also based on evidence showing that neither defendant nor his family wanted to be forced to go to Guatemala. The government also noted defendant's past use of a false identity as an indication he would be able to evade detection if he decided to flee.

---

[1] *United States v. Avelarea-Padilla*, No. 3:18cr291, ECF Doc. 17, (Zouhary, J., October 25, 2018); *United States v. Veloz-Alonso*, No. 1:18cr464, ECF Doc. 21 (Gwin, J., October 12, 2018)

Defendant argued there was no evidence that defendant would flee or fail to appear if released on bond. Defendant and his wife are the fee simple owners of their home and have three children who are United States citizens. Defendant and his wife would pledge their home as security for a bond. Defendant has a long work history. Defendant has filed annual tax returns and interacted with the government by filing real estate documents and being married. Defendant presented numerous letters attesting to his character. Defendant has a currently-pending asylum application. Defendant has petitioned the Sixth Circuit Court of Appeals to grant him relief from the order of reinstatement of his removal order (Case No. 18-4011, filed on October 18, 2018, subsequent to the original detention order filed herein).

Defendant's rebuttal evidence was more persuasive. Defendant pointed out that he only one prior criminal offense, from sixteen years ago. He asserted he would be able to return to his job. He pointed out that he and his wife were the outright owners of their residence and would pledge the same as surety for his bond. He provided numerous letters attesting to his character. He argued, and the government did not contest, that he posed no risk to the community.

The court notes the government has had some awareness of defendant's presence in in the United States for years by virtue of filing of annual federal tax returns and his government-sanctioned marriage. The court notes defendant is seeking asylum in the United States and is challenging the reinstatement of his removal order in the Sixth Circuit Court of Appeals. Defendant has every incentive to see those court and administrative proceedings through and could lose his ability to do so if he were to violate the conditions of his pretrial release.

Based upon an examination of the totality of the evidence before the court and an application of all the standards in 18 U.S.C. § 3142, the court finds the government cannot carry

its burden to show by a preponderance of the evidence that defendant poses a serious risk of flight and that no combination of bond conditions could reasonably assure the future appearance of the defendant at future court proceedings.

Defendant's motion to revoke the earlier detention order and to grant him bond is GRANTED. The court will grant defendant a $35,000 secured bond subject to standard and other conditions of release, which are detailed in the bond and conditions of release documents that will be separately filed. Further, defendant will be subject to home detention. Defendant is granted permission to leave the custodial residence to go to work, to report to pretrial services, to meet with his counsel, to attend church, and to attend to documented medical needs. The U.S. Pretrial Services and Probation department must verify that the residence is suitable before defendant may be released. Should it find the residence unsuitable, the court reserves the right to modify this ruling.

IT IS SO ORDERED.

Dated: November 28, 2018

Thomas M. Parker, United States Magistrate Judge